United States District Court

For the Northern District of California

1

2

3

4

5

6

7

8

9                              IN THE UNITED STATES DISTRICT COURT

10

11                            FOR THE NORTHERN DISTRICT OF CALIFORNIA

12

13   VICTOR GUERRERO,                              No. C 13-05671 WHA

14             Plaintiff,

15      v.

16   CALIFORNIA DEPARTMENT OF                      **ORDER GRANTING
     CORRECTIONS & REHABILITATION;                 IN PART AND
17   STATE PERSONNEL BOARD; and in                  DENYING IN PART
     their official capacities JEFFREY BEARD,       MOTIONS TO
18   Secretary of the California Department of       DISMISS FEDERAL
     Corrections and Rehabilitation; SUZANNE        CLAIMS AND
19   AMBROSE, Executive Officer of State            DISMISSING ALL
     Personnel Board; K. CARROLL,                   CLAIMS BROUGHT
20   Lieutenant; D. SHARP, Sergeant;                UNDER CALIFORNIA
     BARBARA LEASHORE, Hearing Officer;             STATE LAW**
21   C. HESTER, Lieutenant, V. MAYOL,
     Lieutenant; S. COX, Lieutenant; V.
22   MYERS, Sergeant,

23             Defendants.
                                        /
24

25                                     **INTRODUCTION**

26          In this employment-discrimination action, defendants move to dismiss.  For the foregoing

27   reasons, defendants' motions as to plaintiff's federal claims are **GRANTED IN PART AND DENIED**

28   **IN PART**.  On the other hand, plaintiff's state-law claims are barred by the Eleventh Amendment

     and are therefore **DISMISSED**.

**United States District Court**
For the Northern District of California

**STATEMENT**

In or around 1990, plaintiff Victor Guerrero was brought to the United States from Mexico at age eleven. He began working at fifteen, using a false social security number ("SSN"). Two years later in 1997, plaintiff acquired a legitimate Individual Taxpayer Identification Number ("ITIN") from the Internal Revenue Service ("IRS") to pay taxes. Plaintiff acquired a legitimate SSN in 2007 once he obtained permanent resident status. He became a United States citizen in 2010.

In August 2011, plaintiff applied for a position as a correctional officer with defendant California Department of Corrections and Rehabilitation ("CDCR"). He passed the written examination and physical agility tests and filled out an extensive background questionnaire. The questionnaire asked whether he "had or used a social security number other than the one . . . used on this questionnaire." He answered, "I found out that my legal status in this country was not very well defined" and therefore did not have an SSN. Accordingly, "I invented a number and used [it] to obtain work" (A.R. 47). A January 2012 letter from CDCR, signed by two individually-named defendants, informed plaintiff that he was not eligible for the position of correctional officer because he had failed to demonstrate "integrity, honesty, [and] good judgment," as required by State Personnel Board Rule 172. The letter went on to assert, *inter alia*, that plaintiff had "committed identity theft for eight years [by] utilizing a social security number of a United States citizen causing unknown ramifications for that person by having income reported under their number which they were unaware of" (A.R. 2).

Plaintiff appealed to defendant State Personnel Board ("SPB"). In his appeal, plaintiff stated that "[a]t the age of 17, . . . my parents first made me aware that I was an undocumented worker and I also learned that the social security number they had provided me was fictitious" (A.R. 85). This statement that his parents "provided" him with the false SSN contradicted his previous statement to the CDCR.

SPB held an "informal hearing" and plaintiff was allowed to clarify any facts in his record to hearing officer defendant Barbara Leashore (Opp. at 9–10, Dkt. No. 43). SPB considered Leashore's recommendation to affirm CDCR and eventually issued an August 2012

2

United States District Court

For the Northern District of California

1    resolution affirming CDCR.  SPB's resolution acknowledged plaintiff's argument that he did not

2    "steal another's social security number," but it concluded that plaintiff had nonetheless shown a

3    "knowing and willful disregard of the law" and therefore demonstrated "a lack of honesty,

4    integrity, and good judgment."  The resolution also accused plaintiff of misstating the year in

5    which he had received his legitimate SSN, and asserted that this misstatement was evidence of

6    "lack of thoroughness and accuracy, which are also issues of unsuitability under [S]ection 172"

7    (A.R. 116).

8         In 2013, plaintiff then re-applied for the correctional officer position with defendant

9    CDCR, but was again notified in October 2013 that he would be removed from the list of eligible

10   candidates.  After receiving a right-to-sue letter from the Equal Employment Opportunity

11   Commission "on the foregoing matters," plaintiff brought this action against SPB (including its

12   individually-named officers in their official capacities) and CDCR (including its individually-

13   named officers in their official capacities) on December 9, 2013  (Sec. Amd. Compl. ¶¶ 3,

14   26–48).

15        The second amended complaint, the operative pleading, alleges three federal claims:  (1)

16   disparate impact under Title VII of the Civil Rights Act; (2) violation of the Equal Protection

17   Clause of the Fourteenth Amendment under 42 U.S.C. 1983; and (3) violations of the Due

18   Process Clause of the Fourteenth Amendment under 42 U.S.C. 1983.  It also alleges the

19   following California state-law claims:  (4) violation of the Fair Employment and Housing Act;

20   (5) violation of Government Code Section 11135; (6) violation of the Equal Protection Clause of

21   the California Constitution; and (7) violation of the Due Process Clause of the California

22   Constitution; and additionally requests writs of mandate for (8) violation of the California Due

23   Process Clause; (9) unlawful expansion of legislation; and (10) violation of state and federal

24   anti-discrimination laws.  This order follows full briefing and oral argument.

25

26

27

28

**United States District Court**
For the Northern District of California

**ANALYSIS**

To survive a motion to dismiss, a pleading must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face.  Lack of a cognizable legal theory or mere conclusory allegations, however, will result in dismissal.  *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

CDCR moves to dismiss all federal claims under Rule 12(b)(6).  In addition to fully joining CDCR's motion to dismiss, SPB separately argues that it is entitled to absolute immunity, immunity under the Eleventh Amendment, and that it is not liable under Title VII.

**1.      ELEVENTH AMENDMENT IMMUNITY.**

Plaintiff seeks monetary damages against CDCR and SPB under Title VII.  He does not, however, seek monetary damages from CRCR or SPB under Section 1983.  In addition, he does not seek monetary damages under any theory from any individually-named employee of either CDCR or SPB.

SPB claims Eleventh Amendment immunity from plaintiff's Section 1983 claims for declaratory and injunctive relief.  The Eleventh Amendment bars "a citizen from bringing a suit against his own State in federal court."  *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 237–38 (1985).  Eleventh Amendment immunity extends to actions against state agencies, such as CDCR and SPB, *Brown v. California Dep't. of Corr.*, 554 F.3d 747, 752 (9th Cir. 2009), as well as to individuals sued in their official state capacities "because the state is the real party in interest," *Leer v. Murphy*, 844 F.2d 628, 631 (9th Cir. 1988).

Congress, however, can abrogate Eleventh Amendment immunity without the consent of the states if it does so through an unequivocal expression of congressional intent.  *Fitzpatrick v. Bitzer*, 427 U.S. 445, 454 (1976).  Relevant to this action, the Supreme Court found that Congress intended to abrogate Eleventh Amendment immunity for Title VII claims; therefore, the Eleventh Amendment does not bar plaintiff from seeking money damages from CDCR or SPB under certain types of Title VII claims.  *Ibid.*  On the other hand, the Eleventh Amendment bars plaintiff from seeking money damages from CDCR or SPB under Section 1983.  *Quern v. Jordan*, 440 U.S. 332, 343–45 (1979).

**United States District Court**

For the Northern District of California

1    The Eleventh Amendment, however, does not bar actions that only seek prospective

2   relief. *Ex Parte Young*, 209 U.S. 123 (1908).

3          In determining whether the doctrine of *Ex parte Young* avoids an
           Eleventh Amendment bar to suit, a court need only conduct a
4          straightforward inquiry into whether the complaint alleges an ongoing
           violation of federal law and seeks relief properly characterized as
5          prospective.

6   *Verizon Md. Inc. v. Pub. Serv. Comm'n. of Md.*, 535 U.S. 635, 645 (2002) (citations omitted).

7          SPB argues that plaintiff only seeks to contest SPB's previous adjudication of his appeal

8   and therefore only seeks retrospective relief.  This argument is rejected.  Plaintiff seeks

9   prospective relief because he still seeks to become a correctional officer.  To this end, he re-

10  submitted an application for a correctional officer position with the CDCR, which was denied,

11  and currently has an appeal pending before SPB (Opp. at 12 n.6).  SPB's claim for Eleventh

12  Amendment immunity for plaintiff's Section 1983 claims is **DENIED**.

13         **2.    EQUAL PROTECTION CLAIM.**

14         For its part, CDCR moves to eliminate the Section 1983 equal protection claim.  "To

15  state a claim under [Section 1983] for a violation of the Equal Protection Clause of the

16  Fourteenth Amendment[,] a plaintiff must show that the defendants acted with an *intent* or

17  *purpose* to discriminate against the plaintiff based upon membership in a protected class."

18  *Furnace v. Sullivan*, 705 F.3d 1021, 1030 (9th Cir. 2013) (emphasis added).  While

19  discriminatory intent may be proven by direct or circumstantial evidence, unintentional conduct

20  that has a disparate impact on minorities does not violate the Equal Protection Clause.

21  *Washington v. Davis*, 426 U.S. 229, 239–40 (1976).  The complaint alleges that defendants'

22  policy "have caused and will continue to cause the disqualification of Latino and/or all non-

23  native born U.S. citizen applicants as opposed to applicants of other national origins" and their

24  actions were "intentional, willful, malicious, and/or done with reckless disregard . . . ." (Sec.

25  Amd. Compl. ¶¶ 68, 77).

26         It is true that the complaint alleges that defendants intended to discriminate against

27  plaintiff based on his race.  This allegation, however, is highly conclusory and insufficient to

28  meet the *Iqbal* pleading standard.  *See Dahlia v. Rodriguez*, 735 F.3d 1060, 1066 (9th Cir. 2013)

5

United States District Court

For the Northern District of California

1    (*Iqbal* and *Twombly* apply to Section 1983 claims).  Accordingly, CDCR's motion to dismiss

2    plaintiff's Section 1983 equal protection claim is **GRANTED**.

3         **3.    SUBSTANTIVE DUE PROCESS CLAIM.**

4         In addition, the complaint alleges that defendants violated plaintiff's substantive due

5    process rights by permanently depriving him of his right to be a correctional officer.  The

6    Supreme Court has held that a claim for relief cannot be based on substantive due process where

7    a more specific constitutional provision is applicable.  *Albright v. Oliver*, 510 U.S. 266, 273

8    (1994).  In *Johnson v. California*, 207 F.3d 650, 655–56 (9th Cir. 2000), *rev'd on other grounds,*

9    543 U.S. 499 (2005), our court of appeals held that "[b]ecause the Equal Protection Clause

10   [claim of racial discrimination] covers the actions challenged in the complaint, [the plaintiff]

11   may not proceed on a substantive due process theory."

12        So too here.  Plaintiff is alleging that defendants' *uniform policy* disqualifies a *class* of

13   persons from employment, whether the class is composed of Latinos or formerly-undocumented

14   workers.  This is better adjudicated under equal protection analysis.  *See, e.g., Wilkins v. County*

15   *of Alameda*, 2012 U.S. Dist. LEXIS 91645, at 11–12 (N.D. Cal. June 28, 2012) (Judge Lucy

16   Koh).  Accordingly, CDCR's motion to dismiss the Section 1983 substantive due process claim

17   is **GRANTED**.

18        **4.    PROCEDURAL DUE PROCESS CLAIM.**

19        The complaint also alleges procedural due process violations.  It alleges that CDCR

20   reached unfounded conclusions in its rejection letter — for instance, that plaintiff's false SSN

21   actually belonged to somebody else, that he violated state law by using his false SSN to collect

22   worker's compensation in Colorado, and that he could have used his ITIN number to qualify for

23   employment  (A.R. at 2–3).  *See also* T.D. 8671, 1996-1 C.B. 314.

24        To determine whether plaintiff has been granted adequate procedural protections, three

25   factors are weighed:  (1) the protected interest affected; (2) the risk of erroneous deprivation and

26   the value of new or different procedural safeguards; and (3) the interests of the government,

27   including the burden of new or different procedures.  *Mathews v. Eldridge*, 424 U.S. 319, 335

28   (1976).

6

**United States District Court**
For the Northern District of California

1
2
3
4
5

> [B]ecause procedural due process analysis essentially boils down to an *ad hoc* balancing inquiry, the law regarding procedural due process claims can rarely be considered clearly established at least in the absence of closely corresponding factual and legal precedent . . . Indeed, without specific direction from cases applying it, the *Mathews* standard is even less amenable to the discovery of clearly established law than . . . other multifactor balancing tests that arise in constitutional jurisprudence.

6  *Brewster v. Board of Educ. of Lynwood Unified School Dist.*, 149 F.3d 971, 983 (9th Cir. 1998)

7  (citations omitted).

8      At this stage, it is not possible determine, as a matter of law, whether the administrative

9  process used by defendants satisfied the *Mathews* standard.  The issue needs a more complete

10  record.  It is possible, for example, that no one was assigned the SSN used by plaintiff and that

11  CDCR erred in so finding.  The motion to dismiss the procedural due process claim is **DENIED**.

12      **5.    TITLE VII CLAIM.**

13      The Title VII claim is brought against all defendants.  CDCR moves to dismiss.  SPB

14  separately argues that it does not have the necessary employer-employee relationship with

15  plaintiff in order to be liable under Title VII.

16          ***A.    Protected Class.***

17      Title VII prohibits employers from discriminating against individuals with respect to

18  compensation, terms, conditions, or privileges of employment on the basis of race, color,

19  religion, sex, or national origin.  42 U.S.C. 2000e-2(a).  Unlike the Section 1983 equal protection

20  claim, this order rejects CDCR's challenge to plaintiff's Title VII claim.  The argument CDCR

21  raises against the Title VII claim is that plaintiff seeks relief based only on immigration status

22  (Br. at 4–5).  This is untrue.  The Title VII claim is based on a class of Latinos (Sec. Amd.

23  Compl. ¶ 51).  Therefore, CDCR's challenge is rejected.

24      On its own motion, the Court has evaluated whether the dismissal of the Section 1983

25  equal protection claim necessarily results in the dismissal of the Title VII claim.  The answer is

26  no.  The Section 1983 equal protection claim is dismissed because plaintiff failed to plead intent

27  in more than a conclusory fashion.  Title VII disparate impact claims, however, do not include an

28  intent element.  *Ricci v. DeStefano*, 557 U.S. 557, 576–83 (2009).

United States District Court

For the Northern District of California

1         It is further worth pointing out that several judges in our district have held that a

2 *McDonnell-Douglas prima facie* showing is an evidentiary standard, not a pleading standard.

3 *See Kuang-Bao Ou-Young v. Potter*, 2011 U.S. Dist. LEXIS 22, 6–8 (N.D. Cal. Jan. 3, 2011)

4 (Judge Richard Seeborg); *Jianjun Xie v. Oakland Unified Sch. Dist.*, 2013 U.S. Dist. LEXIS

5 29898, at \*9–11 (N.D. Cal. Mar. 4, 2013) (Judge Charles Breyer); *see also Al-Kidd v. Ashcroft*,

6 580 F.3d 949, 974 (9th Cir. 2009) (*dicta*), *rev'd on other grounds sub nom. Ashcroft v. Al-Kidd*,

7 131 S. Ct. 2074 (2011).  For the foregoing reasons, CDCR's motion to dismiss the Title VII

8 claim against it is **DENIED**.

9                   ***B.    Employment Relationship.***

10         SPB argues that it does not have the necessary employer-employee relationship with

11 plaintiff in order to be liable under Title VII.  In response, plaintiff contends that "SPB is a third-

12 party interferer [in an indirect employment relationship with plaintiff] whose actions

13 discriminatorily barred him from employment" (Opp. at 4).

14         This order agrees with SPB.  Plaintiff is seeking money from SPB for having done

15 nothing more than performing its state function to review every decision by other state agencies

16 and finding CDCR compliant.  It is not plausible on this record to imagine a circumstance in

17 which SPB or its individually-named officials are liable for money damages.

18         It is more plausible that SPB and its individually-named officials should stay in the action

19 in order to facilitate declaratory relief, if any, in favor of plaintiff.  SPB, however, states in its

20 supplemental briefing that it will not interfere with a decision by CDCR to hire plaintiff if CDCR

21 is so ordered by the Court or otherwise collaterally attack any court-ordered relief directed at

22 CDCR.  Accordingly, SPB's motion dismiss plaintiff's Title VII claim against it is **GRANTED**.

23           **6.    ABSOLUTE IMMUNITY.**

24         All that remains by way of potential relief against SPB and its employee-defendants sued

25 in their official capacities is prospective relief.  Contrary to their arguments, quasi-judicial

26 absolute immunity does *not* bar SPB and its employee-defendants (sued in their official capacity

27 only) from being sued to challenge one of their decisions as illegal.  "In an official-capacity

28

**United States District Court**
For the Northern District of California

1    action, [individual defenses, such as absolute immunity] are unavailable." *Ky. v. Graham*, 473

2    U.S. 159, 165–67 (1985).

3         In its supplemental briefing, SPB also raises the defense of legislative immunity based on

4    its adoption of SPB Rule 172 (Supp. Br. at 3).  Plaintiff, however, does not rely on SPB's

5    promulgation of SPB Rule 172 in this action.  Rather, he claims that SPB's *affirmation* of

6    CDCR's interpretation of Rule 172 is the basis for his claims.

7         SPB's claim for absolute immunity is **DENIED.**

8         **7.    STATE-LAW CLAIMS.**

9         The Supreme Court has held:

10             *A federal court's grant of relief against state officials on the basis of*
               *state law, whether prospective or retroactive, does not vindicate the*
11             *supreme authority of federal law . . .* it is difficult to think of a greater
               intrusion on state sovereignty than when a federal court instructs state
12             officials on how to conform their conduct to state law.  Such a result
               conflicts directly with the principles of federalism that underlie the
13             Eleventh Amendment.  We conclude that *Young . . .* [is] inapplicable
               in a suit against state officials on the basis of state law.

14   *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984) (emphasis added);

15   *Spoklie v. Mont.*, 411 F.3d 1051, 1060 (9th Cir. 2005) (same).  Thus, a federal court cannot grant

16   plaintiff any relief based on his state-law claims because SPB and CDCR do not waive their

17   Eleventh Amendment immunity in this action.  There is no supplemental jurisdiction over

18   plaintiff's state-law claims because 28 U.S.C 1367 "does not abrogate a state's constitutional

19   immunity under the Eleventh Amendment from suit in federal court."  *Rohnert Park Citizens to*

20   *Enforce CEQA v. Cal. DOT*, 2008 U.S. Dist. LEXIS 41004, at *5–6 (N.D. Cal. May 20, 2008)

21   (Judge Thelton Henderson), *citing Stanley v. Tr. of Cal. State Univ.*, 433 F.3d 1129, 1134 (9th

22   Cir. 2006).

23        Because adjudication of plaintiff's California state-law claims in federal court would

24   contravene the Eleventh Amendment, plaintiff's state-law claims against all defendants must be

25   **DISMISSED**.  These may be re-filed in state court.

26        **8.    JUDICIAL NOTICE.**

27        The joint request for judicial notice of the State Personnel Board administrative record

28   and resolution is **GRANTED**.

9

**CONCLUSION**

To the extent stated above, defendants' motions to dismiss are **GRANTED IN PART AND DENIED IN PART**.  Defendants' motions to dismiss plaintiff's Section 1983 equal protection and substantive due process claims are **GRANTED**.  SPB's motion to dismiss plaintiff's Title VII claim against it is **GRANTED**.  CDCR's motion to dismiss the Title VII claim, however, is **DENIED**.  Defendants' motion to dismiss the procedural due process claim is **DENIED**.  Plaintiff's state-law claims are dismissed without prejudice to re-filing in state court.

Plaintiff's procedural due process and Title VII claims both require a more complete record.  To tee this up, defendants shall move for summary judgment on plaintiff's procedural due process and Title VII claims within **62 CALENDAR DAYS** (nine weeks).  Both sides may take discovery, effective now, on the issues raised.  Afterwards, plaintiff shall have an additional eight weeks in which to take discovery and to file an opposition.  Defendants may take further discovery from any declarant in opposition.  A reply will be due one week after the opposition.  The motion hearing will be set for **SEPTEMBER 25, 2014, AT 8:00 A.M.**

Plaintiff will have until **MAY 29, 2014**, to file a motion, noticed on the normal 35-day calendar, for leave to amend his Section 1983 equal protection claim.  He may also seek leave to re-plead his Title VII claim against SPB.  A proposed amended complaint must be appended to this motion.  Plaintiff must plead his best case as to these claims for relief.  The motion should clearly explain how the amended complaint cures the deficiencies identified herein, and should include as an exhibit a redlined or highlighted version identifying all changes.  If such a motion is made and granted, it will end up being on a somewhat separate summary judgment track.

**IT IS SO ORDERED.**

Dated:  May 7, 2014.

_____
WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

United States District Court
For the Northern District of California

10