IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VICTOR GUERRERO,<br><br>Plaintiff,<br><br>v.<br><br>CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION; STATE PERSONNEL BOARD; et al.,<br><br>Defendants. | No. C 13-05671 WHA<br><br>**ORDER RE RELIEF** |

## INTRODUCTION

In this Title VII and equal protection challenge, after a six-day bench trial, an order found that defendants had violated Title VII by discriminating against a Latino job applicant based on his previous use of an invalid social security number. Plaintiff's equal protection claim was denied. This order grants some, but not all, of plaintiff's requested relief.

## STATEMENT

The procedural history of this case appears in the findings of fact and conclusions of law (Dkt. No. 263). In brief, plaintiff Victor Guerrero became a United States citizen in 2011 and applied to become a prison guard with defendant California Department of Corrections and Rehabilitation. Before Guerrero became a legal permanent resident, however, he had used an invented social security number for employment purposes. After passing CDCR's written and physical examinations, CDCR placed him on its eligibility list. The next step included completing CDCR's background investigation questionnaire. Question 75 asked: "Have you ever had or used a social security number other than the one you used on this questionnaire?" Guerrero answered "Yes" and wrote in an explanation. CDCR treated Guerrero's prior invalid

SSN as a showstopper and withheld him from the eligibility list for this sole reason. Guerrero appealed CDCR's withhold decision to the California State Personnel Board, which affirmed. A year later, Guerrero again applied to CDCR and was withheld for the same reason. Guerrero then appealed CDCR's second withhold to SPB, which is still pending.

In Guerrero's case, defendants violated Title VII by failing to properly consider the recency, relevancy, and severity of Guerrero's prior invalid SSN use, factors required by the Equal Employment Opportunity Commission's guidelines. Instead, CDCR and SPB conclusively dismissed Guerrero's application without considering those factors. Consequently, defendants violated Title VII.

Before trial, Guerrero explicitly waived any monetary damages and affirmed that he only sought equitable relief in his individual capacity (Dkt. No. 156). Guerrero, therefore, waived his right to a jury trial. A bench trial ensued and Guerrero won on his Title VII claim. Now, Guerrero seeks a wide array of equitable relief including reinstatement, recision of withhold letters, purging of documents, declaratory relief, backpay, and broad systemic injunctive relief. Guerrero also asserts that he will seek a post-judgment award of attorney's fees and costs. This is not a class action.

This order follows full briefing and oral argument.

**ANALYSIS**

"Equity eschews mechanical rules; it depends on flexibility." *Holmberg v. Armbrecht*, 327 U.S. 392, 396 (1946). Moreover, "Congress' purpose in vesting a variety of discretionary powers in the courts was not to limit appellate review of trial courts, or to invite inconsistency and caprice, but rather to make possible the fashioning of the most complete relief possible." *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 421 (1975) (internal quotations omitted).

1. **GUERRERO'S INDIVIDUAL RELIEF.**

"[R]einstatement, when it is feasible, is the 'preferred remedy' in a discrimination suit." *Caudle v. Bristow Optical Co., Inc.*, 224 F.3d 1014, 1020 (9th Cir. 2000) (quoting *Gotthardt v. National R.R. Passenger Corp.*, 191 F.3d 1148, 1156 (9th Cir. 1999)). Here, the parties agree that reinstatement is the proper remedy. Consequently, Guerrero shall be placed in the same

position he held prior to his withhold by CDCR — Stage 2 of the CDCR hiring process (the background investigation phase).  In order to complete Stage 2, Guerrero will need to take the vision and psychological examinations, which he had not yet taken when CDCR withheld him.  This must be done by **NOVEMBER 20, 2015.**

The main issue now in dispute is the scope of any background investigation Guerrero should be subject to when he returns to Stage 2.  If Guerrero successfully completes the remainder of the CDCR hiring process, he will become a California peace officer.  He will carry a badge and likely a gun.  CDCR and the public have a significant interest in ensuring that peace officers have the requisite moral character to function effectively in the prison environment.

Therefore, after reinstatement, CDCR may subject Guerrero to a further background investigation at Stage 2.  Guerrero shall promptly update his personal history statement to make it current, but need not answer anything as to a prior use of any SSN.  CDCR shall not in any way make any further investigation into (or base any withholding or denial on) anything regarding the use of the invalid SSN.  Because CDCR treated the invalid SSN use as a showstopper, CDCR will be allowed to complete its background check on other items to the extent not previously done, keeping in mind the extent to which information already known to CDCR posed no issue.  It will be problematic if CDCR resurrects as negatives items that passed without notice before.  The Court will retain jurisdiction to review any negative finding or withholding by CDCR or SPB.  In conducting this background investigation, CDCR must follow the law.

Guerrero argues that upon reinstatement, he should not be subject to a further background investigation.  Instead, he asserts that "CDCR should be precluded from reopening any matters that were or could have been known to it as of April 22, 2013.  Any re-visiting or reconsideration of Mr. Guerrero's background pre-April 22, 2013 would be highly suggestive of retaliation for having initiated this lawsuit" (Br. at 7).

It is true that CDCR's original background investigations of Guerrero were completely deficient.  As explained in the findings of fact and conclusions of law, CDCR clearly

misunderstood Guerrero's past invalid SSN use and the application of his ITIN. Despite this, Title VII "requires that persons aggrieved by the consequences and effects of the unlawful employment practice be, so far as possible, restored to a position where they would have been were it not for the unlawful discrimination." *Franks v. Bowman Transp. Co., Inc.*, 424 U.S. 747, 764 (1976) (internal quotation omitted). Had CDCR followed the law in conducting Guerrero's background investigation, it is not a given that he would have passed. The proper and fair equitable remedy, therefore, is for Guerrero to be returned to the background investigation phase, where CDCR will complete its background investigation in compliance with Title VII and the EEOC factors. While Guerrero's fear of retaliation during the background phase is legitimate, with all the eyes on this case, including those of the judge, this order is confident that CDCR will act properly. To repeat, the Court will retain jurisdiction to review any action. The further background check must be completed in time to allow Guerrero to enter the February 16, 2016 training academy (if he passes), and must be done by personnel uninvolved with the prior violations of Title VII.

Guerrero also requests that CDCR rescind its withhold letters dated January 27, 2012, and October 21, 2013. As these letters were the result of unlawful conduct by CDCR, they shall be rescinded, meaning CDCR shall place memos in Guerrero's file stating that those actions were in violation of Title VII and have been rescinded. SPB shall also rescind its decision to affirm CDCR's first withhold, dated August 21, 2012. Guerrero's second appeal to SPB (which is still pending) shall be denied as moot.

In addition to recision of the withhold letters, Guerrero "seeks an order requiring CDCR to purge any and all files concerning [Guerrero] of any negative references or conclusions pertaining to his prior use of an invalid SSN, and amending the discrepancy notices related to his SSN misuse to conclude that the background investigator's recommendation in case of each such 'discrepancy' is clear to [Guerrero]" (Br. at 8). This request goes too far. Requiring CDCR to review and purge Guerrero's entire file is unnecessary. Recision of the withhold letters and a fresh and lawful background investigation is a sufficient equitable remedy in this regard.

Furthermore, Guerrero requests an order stating that he shall not be retaliated against and, to avoid retaliation, that he not be placed in situations where he would be trained or supervised by CDCR defendants Sharp, Myers, Carroll, Cox, Hester, or Mayol, as well as CDCR's Rule 30(b)(6) witness Captain O'Brien. These requests are overly prophylactic and potentially unworkable. The named defendants are many of the high-up supervisors at CDCR and Guerrero would likely come into contact with them if he ends up working as a prison guard. The Court, however, will retain jurisdiction to hear any complaint or issue concerning retaliation by anyone, including those referenced. Guerrero's requested declaration, that defendants violated Title VII, remains unnecessary, as the findings of fact and conclusions of law explicitly found that CDCR and SPB had violated Title VII in their consideration of Guerrero's past invalid SSN use.

### 2. BACKPAY.

"[G]iven a finding of unlawful discrimination, backpay should be denied only for reasons which, if applied generally, would not frustrate the central statutory purposes of eradicating discrimination throughout the economy and making persons whole for injuries suffered through past discrimination." *Albemarle*, 422 U.S. at 421. "Yet, it remains a cardinal, albeit frequently unarticulated assumption, that a backpay remedy must be sufficiently tailored to expunge only the actual, and not merely speculative, consequences of the unfair labor practices." *Sure-Tan, Inc. v. N.L.R.B.*, 467 U.S. 883, 900 (1984).

Backpay is an equitable remedy and it survived Guerrero's waiver of monetary damages. In our case, Guerrero requests $139,782 in salary backpay, what Guerrero would have earned, based on publicly posted CDCR salary tables, had he been hired and began the CDCR academy on January 1, 2013, and continued to work through September 30, 2015. In addition, Guerrero requests $60,690 in lost employment benefits, which he would have earned based on publicly available CDCR benefit tables, had he been employed during the same time period. Guerrero concedes that his backpay award must be offset by the money he earned in the interim, which amounts to $60,111, based on his current tax forms. Thus, Guerrero requests a

total backpay award of $140,362, plus applicable interest, to be allocated jointly and severally between CDCR and SPB.

Defendants do not dispute the accuracy of the numbers and calculations provided by Guerrero. Instead, they simply argue that Guerrero's requested backpay award is too speculative and thus he is not entitled to any backpay. Specifically, defendants assert that there is no guarantee that Guerrero, even if he had passed the psychological and vision tests, would have graduated to Stage 3 of the hiring process (the training academy) or would have made it through the academy to full time employment. Defendants point out that according to the testimony of Dr. Michael Dumond, between 2009–2014, 50.1 percent of applicants entering Stage 2 (where Guerrero will be reinstated) were withheld from entering Stage 3. Additionally, of those who began the training academy between 2009–2014, only 92.5 percent successfully completed it (Tr. 769–72).

Based on the thorough calculations contained in Guerrero's brief, this backpay request is reasonable. To address the possible speculative nature of the award, however, Guerrero will receive this backpay only if he advances through Stage 2 of the hiring process and completes the 16-week training academy. If Guerrero fails to complete the academy, he will not receive any backpay. While not perfect, this backpay award is the most equitable remedy based on the information available and the likelihood Guerrero would have worked full time as a prison guard during the relevant time period. CDCR and SPB shall be jointly and severally liable for the balance of the backpay remedy if Guerrero completes the training academy.

**3. BROAD SYSTEMIC INJUNCTIVE RELIEF.**

In addition to injunctive relief specific to the individual plaintiff, as described above, Guerrero seeks systemic injunctive relief in regards to CDCR and SPB's hiring practices. Specifically, Guerrero requests the following (Br. at 11–14): (1) that CDCR retain experts to review its hiring process to ensure that it is properly validated; (2) modifications to CDCR's "Discrepancy Notice" form; (3) training for CDCR and SPB staff on the EEOC guidance; (4) consideration of the alternative background investigation testing devices plaintiff presented during trial; (5) that CDCR and SPB report to the Court for five years, on a quarterly basis, the

number of applicants rejected based on use of an invalid SSN; and (6) that the Court retain jurisdiction of this case for the purposes of monitoring and ensuring compliance in perpetuity.

This is not a class action and has never even been proposed as a class action. This case is about a single plaintiff and CDCR and SPB's discrimination against him. The relief, therefore, shall be tailored specifically to Guerrero.

At oral argument, Guerrero relied on *Criswell v. Western Airlines, Inc.*, 709 F.2d 544 (9th Cir. 1983), in which our court of appeals affirmed the district court's systemic injunctive remedy, despite the fact that the case was not a class action. *Criswell*, however, is distinguishable from our case. *Criswell* involved three airline pilots suing their employer for instituting a mandatory retirement age, in violation of the Age Discrimination in Employment Act. After a jury trial, the district court permanently enjoined the airline from enforcing its mandatory retirement age. In affirming the injunction, our court of appeals stressed "[i]n this case, Western's actions regarding the plaintiffs were taken pursuant to a class-wide, age-based policy equally applicable to all flight deck crew members" and thus class-type relief was warranted. *Id*. at 558.

Not so in our case. Here, as stressed in the findings of fact and conclusions of law, Question 75 itself did not constitute an illegal policy. Rather, defendants' use of Guerrero's answer to Question 75 as a showstopper, wherein defendants failed to consider the recency, relevancy, and severity of his specific use of an invalid SSN, violated Title VII. In our case, the application of the policy in one specific case, rather than the entire policy itself (as in *Criswell*), violated the law. The request for broad, systemic injunctive relief as if this were a class action, along with intermittent judicial monitoring, is **DENIED**.

**4.    CDCR'S REQUEST FOR A STAY OF ANY RELIEF ORDER.**

The decision to grant a stay pending appeal involves an exercise in judicial discretion and is dependant upon the circumstances of the particular case. *Nken v. Holder*, 556 U.S. 418, 421 (2009).

CDCR requests that any relief order be stayed until the appeals process has been exhausted. CDCR's request, however, mainly refers to a stay of any systemic injunctive relief.

7

1  Specifically, at the end of its brief, CDCR states: "Alternatively, CDCR requests that this Court
2  stay all relief except individual relief to plaintiff (*i.e.* reinstating him to the background
3  investigation stage as noted above)" (Opp. at 12–13).

4  As stated above, Guerrero's request for systemic injunctive relief is **DENIED**, and thus
5  the thrust of CDCR's stay request is moot.  With regard to a stay of individual relief to
6  Guerrero, any such request is **DENIED**.  Guerrero has waited long enough.  CDCR shall reinstate
7  him as ordered and move forward.  The backpay part, however, shall be stayed until all appeals
8  have been exhausted.

## CONCLUSION

10  For the reasons stated above, plaintiff's request for relief is **GRANTED IN PART AND**
11  **DENIED IN PART**.  Guerrero shall be reinstated to Stage 2 of the CDCR hiring process, where he
12  will need to complete vision testing, psychological testing, and a renewed background
13  investigation in compliance with Title VII.  These steps shall be completed in time to allow
14  Guerrero to attend the February 16, 2016, training academy, if he passes the background
15  investigation.  The Court shall retain jurisdiction to review any negative findings by CDCR or
16  SPB in Guerrero's individual case.  CDCR shall rescind its withhold letters dated January 27,
17  2012, and October 21, 2013, and SPB shall rescind its decision dated August 21, 2012.
18  Guerrero's appeal to SPB of CDCR's second withhold letter is **DENIED AS MOOT**.  If Guerrero,
19  successfully completes the training academy, he will be awarded backpay in the amount of
20  **$140,362**, plus pre and post judgment interest.  Payment of the backpay award is stayed until all
21  appeals have been exhausted.  CDCR and SPB shall be jointly and severally liable for this
22  award.  If Guerrero does not successfully complete the training academy, he will not receive
23  backpay.  All other requested relief is **DENIED**.  CDCR's request for a stay of relief pending
24  appeal is **DENIED**.  Judgment shall be entered separately.

26  **IT IS SO ORDERED.**
27  Dated: September 28, 2015.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE